# COURT OF ERRORS AND APPEALS,

---

ROBERT McCURDY *et al.*, Appellants, and THOS. J. AGNEW, Respondent.

This case, and the proceedings thereon in the Court of Chancery, are reported *ante*, page 9.

*Vandyke* and *P. D. Vroom*, for the appellants.

*R. Adrain* and *J. W. Scott*, for the respondent.

The opinion of the Court was delivered by Justice Randolph.

RANDOLPH, J. The bill in this case is the ordinary one for the foreclosure of a mortgage; but the questions arising from the defence set up are somewhat complicated, and so much involved in the evidence produced, that the Chancellor had some embarrassment in coming to a conclusion. However, after opening the cause for further evidence, and a re-argument of the whole matter, the weight of evidence seemed to him to rest with the defendant, and he decreed a dismissal of the bill.

It appears from the pleadings and evidence that the defendant and John O. Taylor did business in the city of New York, under the firm of Agnew & Taylor, until January, 1844, when they became embarrassed and dissolved, having outstanding debts to the amount of about thirty thousand dollars, and a considerable amount of assets to meet the liabilities, of which the defendant took the whole amount, except fifteen or sixteen

hundred dollars taken by Taylor, and agreed to pay all the debts of the firm and indemnify Taylor. About two or three months after the dissolution, defendant went into the firm of Abbott & Wilson, and took with him goods of the old firm of Agnew & Taylor to the amount of $3,600, and the new firm became that of Agnew, Abbott & Co., and in May after the dissolution, Taylor formed a copartnership with Charles Olcott under the firm of J. O. Taylor & Co. The defendant proceeded to settle up the business of the old firm, and during the months of April, . May and June, 1844, the debts of Agnew & Taylor were mostly paid at the time they fell due, by one or the other of the parties, principally, it is presumed, by Taylor, as, early in April, he became dissatisfied with the manner in which defendant was arranging the business; and on the 13th of April, the further settlement of the late firm passed from the hands of the defendant to those of Taylor, by their mutual consent, on which day the old agreement for the settlement of the business of the firm of Agnew & Taylor was destroyed and a new agreement entered into in writing between the parties, a copy of which has been given in evidence on the part of the complainants, and proved by Taylor on his second examination by order of the Court, previous notice to produce the original having been given, which renders this evidence competent; and a release having been given by complainants to Taylor prior to his first examination, he was rendered a competent witness without impairing the complainants' claim on the bond and mortgage in question, or any other security they may hold for the debt, the discharge in this case operating on the person of the witness, and not on the debt or its security. By this agreement Taylor was to settle up the business of the late firm, Agnew to transfer to him the books, accounts and notes of the firm, and to provide the sum of four thousand dollars in addition for the purpose of the settlement. Taylor was to add to these assets the sum of fifteen hundred and seventy-five dollars, being about the amount he had taken from the firm at the dissolution. It was also agreed by the same instrument, that as Andrew Agnew had signed two notes, for about thirty-two hundred dollars, to Agnew, Abbott & Co., to

secure two notes of the same amount drawn by them for the use of Agnew & Taylor, these notes should be considered a liability of Agnew & Taylor and paid out of their assets, and Andrew Agnew saved harmless and not looked to for the payment of any part of the same.   It was also understood that Taylor was not to render himself personally liable beyond the amount receivable and specified.   This agreement appears to have been drawn by E. H. Kemble, (or at his office,) a witness in the cause, who states that Agnew and Taylor had called on him for the purpose of having an agreement drawn, and stated their difficulties, and that if they could raise money temporarily they could in a short time procure a bond and mortgage which would enable them to go through with the business; and upon his promising to do what he could for them, early in April, Agnew brought to him two notes of Agnew, Abbott & Co. for about thirty-two hundred dollars, the proceeds of which were to be applied to the payment of the debts of Agnew & Taylor, and that these notes were so negotiated or discounted that he advanced to A. & T. on the 4th, 6th and 8th of April, $2900.   One of these notes, he states, was afterwards paid by Taylor, being for $1560 ; and the other, for $1640, was paid, the one-half by Taylor, and the other half by Agnew, Abbott & Co., or each paying one-half of both notes as otherwise proved.   They are no doubt the same notes given in evidence by the defendant, the larger one dated April 1st, 1844, and the other April 4th, 1844, and which Andrew Agnew and Taylor indorsed, and that of $1560 bears also the indorsement of the complainant, and these notes being paid off, of course Andrew Agnew's liability was discharged, both as the indorser of these notes, and as the drawer of the two notes made and deposited with Agnew, Abbott & Co., to meet them. Kemble states further in his evidence, that in pursuance of the suggestion made to him, the bond and mortgage was in a short time procured, and are those now in controversy, bearing date April 16th, 1844, and given for $4000, to enable Taylor to raise the money and pay the debts of Agnew & Taylor, he, Taylor, agreeing to consider them for that purpose as so much cash. They were drawn, as Taylor says, to Andrew Agnew at defend-

ant's suggestion for family reasons, and possibly also, as the defendant and his witnesses, Mr. Lecompt and R. E. Agnew state,. because Andrew Agnew had previously given his notes for $3200 to enable Agnew & Taylor to raise money to settle their affairs; this would be in accordance with the agreement of Agnew & Taylor of April 13, 1844, by which the defendant was to provide $4000 to pay the debts of the firm, and Taylor to save harmless Andrew Agnew from liability by reason of these notes. But that the bond and mortgage were given merely to secure Andrew, is disproved by its amount, being $800 above his liability, by the fact that Andrew had nearly two weeks before given his note without, so far as the evidence goes, ever demanding security, and by the further fact that he seems never to have retained the possession or control of these instruments, as well as by the written agreement of Agnew & Taylor themselves, and the positive testimony of Taylor and Kemble, and the history and circumstances of the transaction. There can be no doubt from the evidence, that the bond and mortgage were given in pursuance of the agreement,. to enable Taylor to raise money to settle up the business of the firm; that it was for that purpose assigned to Kemble and held by him as collateral security for advances, at one time, on these notes of Agnew, Abbott & Co., subsequently, when these were paid off, for other advances, until finally, all being paid off, they were transferred by Taylor's direction to complainants, to pay them for goods furnished Taylor, as the means of enabling him to raise money to pay the debts of Agnew & Taylor, in his mode of settling up the business, he bringing the whole of it into account with the firm of J. O. Taylor & Co., charging Agnew &. Taylor on the books of J. O. Taylor & Co., with the amount paid out, and giving them credit for the amount received from all sources. The charges thus made being according to the books and the evidence, Dr. $20,356.65, and Cr. $9,597.19, and the whole debt of the firm paid off.

The complainants, then, having paid a fair and full consideration for the bond and mortgage, which were used by Taylor, and transferred at his instance to the complainants, to answer the purpose for which they were given; and all Andrew Agnew's

liabilities being settled, the defendant has no right to object to the prayer of the bill. Nor can he, by the defence which he has set up, compel the complainants to go outside of his bill to meet and overcome that defence, and object to this course as a departure from the case made by the bill, for that case is in effect admitted by the answer, which sets up new matter and raises a new issue; a very different thing from a new case and issue being made by complainants variant from that set forth in this bill. The defence set up in the answer being entirely disproved and overcome, 1st, That the bond and mortgage were not created for or merely for Andrew's security; 2d, That Andrew's liability has been entirely paid off; and 3d, That the bond and mortgage were made to enable Taylor to settle up the business of the firm, placed under his control, and issued by him for that purpose, and finally in the course of settlement transferred to complainants for a full consideration, without their knowledge of the mode or cause of their creation, there is nothing to prevent their recovery.

I think, therefore, the decree must he reversed.

The Court unanimously concurred.
Decree reversed.